495 F.2d 390
 Dr. Harry W. THERIAULT, Bishop, Church of the New Song of
Universal Life, etc., et al.,
Plaintiffs-Appellees-Cross Appellants.
v.
Norman A. CARLSON, Director, Bureau of Prisons, etc., et
al.,Defendants-Appellants-Cross Appellees (two cases).
Dr. Harry W. THERIAULT, Plaintiff-Appellant,
v.
Frederick SILBER, Director, U.S. Chaplain Service, et al.,
Defendants-Appellees.
 Nos. 72-2592, 73-1182, 73-2183 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir., 1970,
 
 431 F.2d 409, PartI.
 United States Court of Appeals, Fifth Circuit.
 June 10, 1974, Rehearing and Rehearing En Banc Denied Aug. 13, 1974.
 John W. Stokes, Jr., U.S. Atty., P. Bruce Kirwan, Asst. U.S. Atty., Atlanta, Ga., Alan S. Rosenthal, William D. Appler, Dept. of Justice, Joseph S. Davies, Jr., App. Section, Crim.Div., Dept. of Justice, Washington, D.C., for Norman A. Carlson and others.
 Professor Phillip J. Mause, Iowa City, Iowa, for Dr. Harry W. Theriault and others; Dr. Harry W. Theriault, pro se.
 William S. Sessions, U.S. Atty., San Antonio, Tex., Ronald F. Ederer, Ralph E. Harris, Asst. U.S. Attys., El Paso, Tex., Joseph S. Davies, Jr., App. Section, Crim.Div., Dept. of Justice, Washington, D.C., for Frederick Silber and others.
 Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 These three cases, consolidated for appeal, have as their central theme the alleged deprivation by certain federal prison authorities of the constitutional rights of prison inmates to practice their religious faith, known as the 'Church of the New Song' or the 'Eclatarian' faith. Harry W. Theriault, a federal prison inmate now serving sentences at LaTuna, Texas for various convictions, is the self-proclaimed founder, organizer, bishop, prophet and spiritual leader of the Eclatarians, a group of prison inmates which progressively continues to increase in size as Theriault's various incarcerations increase geographically. His prison sojourns at the federal penitentiaries at Atlanta, Georgia and LaTuna, Texas generated incidents which form the basis of these three appeals which will be referred to herein as Theriault I, Theriault II and Theriault III.[1]
 
 THERIAULT-- No. 72-2592
 
 2
 On June 18, 1970, 'Dr. Harry W. Theriault' and a fellow inmate, 'Reverend Jerry M. Dorrough,' while incarcerated at the Atlanta, Georgia penitentiary, filed this 'First Amendment Action' against the Catholic and Protestant chaplains at Atlanta, alleging various deprivations of their constitutional rights freely to practice their religion, seeking injunctive and other relief.[2] The complainants alleged that the Federal Government's use of taxpayers' money to compensate the chaplains for their services was violative of the Establishment Clause of the Constitution. They further alleged that members of their faith were being unconstitutionally denied the right freely to exercise their religion and that the actions of the chaplains in filing reports with the Parole Board relative to prisoners' participation or lack of participation in religious activities were violative of their First Amendment rights. Their complaint requested generally a recognition of their religion and the granting to them of the same prison religious privileges as those enjoyed by the Catholic and Protestant inmates.
 
 
 3
 Subsequent to the filing of this petition, Theriault was transferred to the federal penitentiary at Marion, Illinois, where because of his alleged threats to a correctional supervisor of violence upon being denied a place to hold religious services, he was placed in solitary confinement until he was returned to Atlanta in August 1971 for hearings on his June 18, 1970 petition. Extensive hearings were conducted in Atlanta in district court on three separate days during the latter part of 1971 and the early part of 1972 at which Theriault was both lead counsel and principal witness. 'Bishop' Theriault and 'Pope' Dorrough testified at length in regard to the source, history and tenets of the Eclatarian faith, acknowledging that Theriault had started it off as a game.[3] Nevertheless, the district judge refused to allow the Government to present expert testimony relative to the validity of the Eclatarian faith as a religion. At the trial much of the testimony pertained to attempts by Theriault and his fellow inmates to hold secret religious services. There was likewise testimony of violence and threats of violence by Theriault which allegedly caused prison officials to refuse him access to assembly rooms. At the conclusion of these hearings the district judge scheduled another hearing for additional testimony concerning the Government's representations of Theriault's tendency to violence, announcing, however, the court's intention to give Theriault a 'trial run' on holding his religious services. At the final hearing at Atlanta, held in January 1972, several correctional officers and other prison officials from the Marion, Illinois penitentiary testified about various threats by Theriault of mass violence, veiled threats of murder, actual physical assault and battery of prison officials, and destruction by Theriault of prison property. One such incident occurred on April 1, 1971, following a request by Theriault to use the chapel or auditorium for the purpose of honoring the birthday of St. Blanche, an Eclatarian saint. Theriault, an escape artist by his own admission, having several times broken away from federal custody, was considered by prison officials to be a high escape risk. Moreover, he and his followers were known troublemakers. Theriault was told of the prison policy requiring permission from the chaplain to secure a meeting place, as it was the chaplain's duty to coordinate religious activities. Theriault declined to follow instructions and announced his intention to hold the meeting, warning the prison authorities that if they used violence to break it up there would be bloodshed. Because of his threats, Theriault was placed in solitary confinement, to which he reacted by kicking the correctional supervisor. He later broke the bed from the cell wall, destroyed the toilet with a piece of angle iron, shoved the bed against the cell door and warned that he would kill anyone who attempted to enter.
 
 
 4
 The district court (Judge Edenfield) granted in part the relief requested by Theriault and issued the following order directed to respondents Hanberry and Beane, Protestant and Catholic chaplains, respectively; Carlson, Director, Bureau of Prisons; Silber, Director of Chaplaincy Services, Bureau of prisons; and Henderson, Warden, Atlanta Penitentiary.
 
 
 5
 '(1) Respondents Hanberry and Beane are enjoined from preparing or submitting oral or written reports to other staff members of the Atlanta federal penitentiary concerning the religious activities of individual inmates at that penitentiary; '(2) Respondent Carlson and respondent Silber are ordered to direct prison authorities under their jurisdiction to grant petitioners the right to freely exercise their religion, including the right to correspond with petitioner Theriault for the purpose of seeking spiritual guidance . . .. '(3) Respondent Henderson is hereby ordered to immediately release petitioner Theriault from confinement in punitive segregation and restore him to the general prison population; and '(4) Respondent Carlson is hereby ordered to instruct prison authorities under his jurisdiction that they may not re-impose confinement in punitive segregation upon petitioner Theriault unless Theriault violates an institutional rule or regulation requiring such confinement subsequent to the date of this opinion and order or incites riot or insurrection during the conduct of his religious activities subsequent to the date of this opinion and order.'[4]
 
 
 6
 Both the Government and Theriault appealed.
 
 THERIAULT II-- No. 73-1182
 
 7
 Subsequent to the Atlanta hearings Theriault was transferred to the federal penitentiary at LaTuna, Texas, on March 3, 1972, where he was again subjected to intermittent segregated confinement allegedly because of his disregard for prison security regulations and his renewed insistence, accompanied by physical violence, that he be allowed use of the prison chapel for religious services without prior approval of the prison chaplain. From LaTuna Theriault filed a petition in the United States District Court for the Western District of Texas seeking an evidentiary hearing in connection with allegations that his segregated confinement was punitive in nature, violative of Judge Edenfield's order (see Theriault I), that the prison chaplains at LaTuna were illegally reporting on his religious activities, and that the authorities at LaTuna were generally denying him religious privileges such as the rights to correspond with fellow members of the Eclatarian faith, to circulate among the prisoners, to obtain bibles peculiar to his sect, and to use the prison chapel. Theriault's petition was dismissed forthwith by the district court (Judge Guinn) on the day it was filed. Theriault appealed.
 
 THERIAULT III-- No. 73-2183
 
 8
 Shortly after the filing of the petition with the Western District of Texas, Theriault, while still incarcerated at LaTuna, filed a motion with the district court at Atlanta alleging failure of respondents to comply with Judge Edenfield's previous order. A four-day evidentiary hearing was held resulting in a finding by the district judge that Directors Carlson and Silber were in contempt of his order in Theriault I.
 
 
 9
 The basis of the motion purportedly grew out of the failure of a prisoner incarcerated at Eglin, Florida, to receive a letter sent by Theriault in response to an inquiry about the Eclatarian faith. A four-day hearing was held. The Government admitted that Theriault's letter had not been delivered inasmuch as Eglin prison officials had not been informed of the court's order. The failure to so inform Eglin was based on the Government's belief that the court order applied only to the 166 petitioners to the original action, which petitioners were incarcerated at either LaTuna or Atlanta. A four-day hearing was held at Atlanta resulting in a finding of contempt against Directors Carlson and Silber. See Theriault v. Carlson, N.D.Ga., 1973, 353 F.Supp. 1061. The Government appealed.
 
 Disposition of THERIAULT I
 
 10
 The Government contends that Theriault I should be remanded in order that it may present evidence that the Eclatarian faith is nothing more than a disruptive, anti-authoritarian political movement and therefore not a bona fide religion entitled to the protection of the Constitution. The Government's attempt to present this proof through expert witnesses was rejected by the district court in both Theriault I and Theriault III. We find the unwillingness of the district court to hear evidence in this regard inexplicable considering the doubt entertained by it that the religion was nothing more than a game and since the proof adduced strongly suggests that petitioners are indeed so engaged. The testimony of Dorrough, co-founder of the faith, may explain why some of the original followers, all incarcerated convicts, find the freedom-seeking sect attractive. He explained on direct examination:
 
 
 11
 'In our Free Exercise Seminars, our revelation ministry is basically to destroy the Nicolaitans which we believe are the repressive rulers and the powercrats of the system. That means-- meaning the prison system, the people in the prison system, the people in the parole system, the people in government in general, the judiciary, et cetera. And we believe in destroying them or changing their minds with the power of our mouth.'
 
 
 12
 First Amendment freedoms are not absolute. They are properly restricted when a sufficiently important governmental interest appears. United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). The long list of court actions to which Theriault is a party, some of which are still pending, as well as the lengthy prison record which he has established over the years,[5] is strongly suggestive of the necessity of employing sharp and careful scrutiny of his activities, including his claim of religious sincerity. One of the tasks of the court 'is to decide whether the beliefs professed by (petitioners) . . . are sincerely held and whether they are, in (their) own scheme of things, religious.' See United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733 (1965).[6] While it is difficult for the courts to establish precise standards by which the bona fides of a religion may be judged,[7] such difficulties have proved to be no hindrance to denials of First Amendment protection to so-called religions which tend to mock established institutions and are obviously shams and absurdities and whose members are patently devoid of religious sincerity. See, e.g., United States v. Kuch, D.C., D.C., 1968, 288 F.Supp. 439.
 
 
 13
 This matter is therefore remanded and the district court is directed to reopen these proceedings and permit the Government to present additional evidence in the fullest possible manner. On remand the court should allow the greatest liberality of proof and examine every aspect of the case. The court must also determine if this is in truth and in fact a class action in accordance with the rules pertaining thereto.
 
 Disposition of THERIAULT II
 
 14
 The Government concedes in its brief, at page 14, 'that the decision of the United States District Court for the Western District of Texas (Theriault II) requires remand in order for that court to enter a full factual explanation of its rejection of Theriault's contentions.' We agree that remand is proper under the circumstances and therefore vacate the order of dismissal entered by the district court and remand for a full evidentiary hearing.
 
 Disposition of THERIAULT III
 
 15
 The district court's holding that respondents Carson and Silber are guilty of a civil contempt is clearly erroneous and unsupported by the evidence. The record shows that Carlson and Silber attempted to comply with an order that was susceptible of misinterpretation.[8] Upon determining what was intended by the order they complied forthwith. We are convinced of their complete sincerity and good faith. The contempt finding by the district court was an abuse of discretion and must be reversed, annulled and set aside.
 
 
 16
 The district court's decision in Theriault I, No. 72-2592, is vacated and the cause is remanded for a full evidentiary hearing. In Theriault II, No. 73-1182, the district court's order is vacated and the cause is remanded for a full evidentiary hearing. In Theriault III, No. 73-2183, the district court's order is reversed, annulled and set aside.
 
 
 
 [1]
 We find it unnecessary for purposes of this appeal to give a detailed account of the origin and tenets of Theriault's newly created religion. The Eclatarian faith, or Church of the New Song, was originally founded by Theriault and Jerry M. Dorrough at the federal penitentiary at Atlanta, Georgia, allegedly as the result of visions experienced by Theriault at the Marion, Illinois federal penitentiary in which he received prophetic messages from 'Eclat' informing him that he was the 'Eclatarian Nazarite' and directing him to establish the Church of the New Song
 
 
 [2]
 Theriault acquired his Doctor of Divinity certificate through a mail order application. Theriault then, as self-appointed 'Bishop of Tellus' ordained Dorrough First Revelation Minister of the Church of the New Song, conferring upon him on the day of the trial at the courtroom the degrees of Doctor of Divinity, Doctor of Philosophy and Bachelor of Philosophy
 The complaint as amended includes 164 additional fellow inmates as plaintiffs and was treated by the district judge as a class action.
 
 
 [3]
 Later, according to Theriault, when he realized he was affecting other people's feelings he started to get more sincere. When he and Dorrough decided to file this complaint they needed the proper caption. Dorrough came forward with this suggestion which they adopted: 'You put yourself down, you be the head of the church, that's the Bishop, you put yours, and put me down as the First Minister.'
 
 
 [4]
 See Theriault v. Carlson, N.D.Ga., 1972, 339 F.Supp. 375
 
 
 [5]
 See Theriault v. United States, 8 Cir., 1968, 401 F.2d 79; Theriault v. United States, 5 Cir., 1968, 402 F.2d 792; Theriault v. United States, 5 Cir., 1969, 409 F.2d 1313; Theriault v. United States, 5 Cir., 1970, 434 F.2d 212; United States v. Theriault, 5 Cir., 1971, 440 F.2d 713; United States v. Theriault, 5 Cir., 1972, 467 F.2d 486; United States v. Theriault, 5 Cir., 1973, 474 F.2d 359; Theriault v. United States, 5 Cir., 1973, 481 F.2d 1193; United States v. Theriault, No. EP73-173 (W.D., Texas)
 
 
 [6]
 The suggestion that we attempt new to establish precise standards is neither feasible nor practical
 
 
 [7]
 In Wisconsin v. Yoder, 406 U.S. 205, 215-216, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972), in determining that the claims of the Old Order Amish religion for refusing to send their children to school after eighth grade rested on a religious basis, had this to say:
 'Although a determination of what is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests.'
 
 
 [8]
 Although the district court directed Carlson and Silber to order prison authorities under their jurisdiction to grant petitioners the right to correspond with petitioner Theriault, the opinion also shows that the 'Eclatarian faithful, aside from one secretary, are to be found only in the federal penitentiaries of Atlanta and Marion.' See Theriault v. Carlson, N.D.Ga., 1972, 339 F.Supp. 375, 377 n. 3. Under these circumstances the failure of respondents to inform prison authorities other than those at Atlanta and Marion was clearly an honest mistake. Apparently Judge Edenfield himself found his order wanting in clarity when in Theriault III, in rewriting parts of his order, he found it necessary to insert the word 'all' before the term 'prison authorities.' See Theriault v. Carlson, N.D.Ga., 1973, 353 F.Supp. 1061, 1068