**Jerry HAMMOND, Plaintiff,**

**Jane Allen Offutt and William N. Offutt, IV, M.D., Intervening Plaintiffs–Appellants,**

v.

**Charlotte BALDWIN, Mary Helen Miller, Donald F. Harker, Jr., in their official capacities, Defendants–Appellees,**

**Toyota Motor Manufacturing, USA, Inc., Intervening Defendants–Appellees.**

No. 87–5992.

United States Court of Appeals, Sixth Circuit.

Argued July 26, 1988.

Decided Jan. 18, 1989.

Rehearing and Rehearing En Banc Denied April 3, 1989.

Theodore E. Cowen, Miller, Griffin and Marks, Lexington, Ky., Robert S. Miller (argued), for intervening plaintiffs-appellants.

Eric L. Ison (argued), Greenebaum, Doll & McDonald, Louisville, Ky., James A. Kegley, Greenebaum, Doll & McDonald, Lexington, Ky., for intervenor-appellee, Toyota.

Arthur Lee Williams (argued), Office of General Counsel, Frankfort, Ky., for defendants-appellees, M.H. Miller, R. McCann, D. Harker.

Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

BOGGS, Circuit Judge.

This is an appeal from a dismissal under Fed.R.Civ.P. 12(b)(6) of the Offutts' § 1983 claim against the present and former Kentucky Secretaries of the Natural Resources and Environmental Protection Cabinet, the Director of the Kentucky Division of Water, an agency within that Cabinet, and Toyota Motor Manufacturing, USA, Inc. (Toyota). The plaintiffs claim that the trial judge erred in his findings of fact and in his dismissal of their claims of: 1) bias on the part of the state agencies and courts; 2) wrongful withholding of information by the state; and 3) deprivation of due process in general. The trial judge dismissed on the grounds that the plaintiffs failed to exhaust their state administrative remedies. The plaintiffs claim that exhaustion would be futile here because of the state's bias. We affirm.

I

In November and December, 1985, a contract was negotiated between the Commonwealth of Kentucky (Kentucky) and Toyota. The contract is in the form of a letter signed by Toyota representatives, Kentucky Governor Collins and Kentucky Secretary of Commerce Knicely. The letter was part of an incentive package from Kentucky to Toyota to get Toyota to build its new plant in Scott County, Kentucky. The plaintiffs own a farm downstream from the site of the Toyota sewage plant, which is now completed, and property in

nearby Georgetown, Kentucky. The constitutionality of this incentive package was upheld in *Hayes v. State Property and Buildings Commission*, 731 S.W.2d 797 (Ky.1987).

The contract between Kentucky and Toyota provides that the state would use its regulatory powers to get suppliers of wastewater treatment to install facilities in the manner referred to in earlier correspondence between Kentucky and Toyota; that the state would "use its best efforts" to expedite the review of permits; and that the state would "use its best efforts" to get any suits relating to the facility resolved "as quickly as possible at minimum cost to Toyota." Kentucky and Toyota have complied with this contract to date.

The Scott County Water Board agreed to build a wastewater plant. Such facility comes within the purview of the Clean Water Act. 33 U.S.C. § 1251. Thus, a permit is required both for discharge and construction. The EPA issues permits unless state agencies agree to do so in conformance with EPA regulations. 33 U.S.C. § 1342. Kentucky has taken over this authority.

In the spring of 1986, Georgetown's Water Board applied for a discharge permit. However, the initial plan allegedly was harmful to the Offutts' water supply and property. Kentucky had guaranteed the cost of the facility within certain financial and temporal limits; thus, the Offutts allege that Kentucky had a financial stake in the issuance of the permit. The plaintiffs hired experts who documented the amount of pollution, some carcinogenic, that would result from implementation of the initial plan, as well as the absence of numerical standards for some pollutants, which the Offutts claim posed a significant threat to the ground and surface waters. The Scott County Board of Adjustments required that the effluent be piped differently than initially planned, and that numerical standards be established. The Offutts thought that this signaled success, and so, ceased their efforts at this point.

However, representatives of organized labor funded a suit by Mr. Hammond, et al., who initially filed the instant suit. The state then issued a construction permit without first meeting the Board of Adjustments' order and without numerical limits. Hammond petitioned the Cabinet for administrative hearings on the construction permit, and the Offutts "actively participated." The Offutts claim that they "went through" the administrative process at this point. The permit was granted; construction is now complete.

The Offutts claim that their allegations of hazard are uncontested and also claim a denial of access to information. In addition, they claim that they were denied their right to submit proof before an agency or court which is not a party to the contract with Toyota.

In July 1986, Hammond sued to enjoin the construction. The Scott County Circuit Court dismissed this claim. Hammond appealed that dismissal, and the appeal was dismissed by the Kentucky Court of Appeals on February 9, 1987. On September 22, 1986, the construction permit was issued. On October 13, 1986, Hammond, along with the Offutts, filed a petition with the Cabinet challenging the construction permit on the administrative level. On October 23, 1986, Hammond filed this suit in the Eastern District of Kentucky. No action has been taken by any plaintiff on the administrative level since the Fall of 1986, though further procedures were available. The Offutts claim that any administrative procedure would be conducted by the Kentucky Cabinet of Natural Resources, which the Offutts claim is a party to the contract and, thus, is necessarily biased.

On January 15, 1987, the Offutts intervened in this suit, as did Toyota shortly thereafter. On April 6, 1987, Hammond and the Offutts filed an amended complaint which mentions only the construction permit, thus limiting this appeal to that permit. In addition, the amended complaint included Toyota as a defendant. On May 8, 1987, Hammond settled and voluntarily dismissed all claims, leaving the Offuts as the only plaintiffs in the suit.

The Offutts then sought discovery. Kentucky refused to comply with some of

the requests because "[p]reliminary drafts, notes, correspondence with private individuals ... [p]reliminary recommendations, and preliminary memoranda ..." are exempt from disclosure under the Kentucky Open Records Act. Ky.Rev.Stat.Ann. § 61.878(1)(g) & (h) (Baldwin 1976).

The Offutts claim that they have suffered irreparable injury, both to their land and to their right to an unbiased tribunal. They claim that mandamus would not be effective because the Kentucky courts have held that they do not have the power to intervene during the pendency of administrative proceedings. In addition, the Offutts claim that Kentucky has been and is acting arbitrarily and capriciously, and, thus, the Offutts have no meaningful opportunity to be heard.

The defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) and the plaintiffs moved for summary judgment. On July 29, 1987, Judge Bertelsman agreed to dismiss the Offutts' complaint; he entered his order on August 7, 1987. Judge Bertelsman relied on his determination that the Offutts were required to exhaust their administrative remedies and had not done so. He held *not* that exhaustion is a prerequisite to a § 1983 claim, but that there was no deprivation on which to base a claim until the state had made a final decision.

## II

On appeal, the plaintiffs reassert their claims of bias and denial of access to information, alleging that their rights to procedural and substantive due process have been violated.[1] They claim that they are relieved of the exhaustion requirement because their allegation of bias makes any further state procedure futile. In addition, they claim that abstention would not be appropriate because their state remedies are inherently inadequate.

1. The first time the substantive due process issue is raised is in the appellants' reply brief. Thus, because it was not raised below, it has not been preserved for appeal and is not properly

## A

The standard of review of a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is that, to be granted, there must be no set of facts which would entitle the plaintiff to recover. *Landers v. Jefferson County, Kentucky*, 842 F.2d 332 (6th Cir.1988). Matters outside the pleadings are not to be considered, and all well-pleaded facts must be taken as true. *Riestenberg v. Broadview Federal Savings and Loan*, 843 F.2d 1392 (6th Cir.1988).

## B

■ The trial judge was correct that exhaustion of state administrative remedies is not required in § 1983 suits. However, "[t]he question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable." *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 192, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126 (1985). The trial judge held that there could be no deprivation on which to base a due process claim until the agency had made a final decision. That he used the vocabulary of exhaustion is merely a semantic difference; in substance, he was correct.

> While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Id.* at 193, 105 S.Ct. at 3120. Clearly, Judge Bertelsman found that no "actual, concrete injury" exists in the present case because there has been no final decision from the agency. If this is correct, then,

before the court. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

according to *Williamson County*, the result should be a holding that the case is not yet ripe for review, not a holding based on the doctrine of exhaustion. *Id.* at 194, 105 S.Ct. at 3120; *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 2384 n. 6, 96 L.Ed.2d 250 (1987).

However, this analysis hinges on what type of injury is alleged. According to *Williamson County*, the type of claim is crucial to determining whether finality is required. 473 U.S. at 194, 105 S.Ct. at 3120. If the injury the Offutts seek to redress is harm to their property amounting to a "deprivation" in constitutional terms, a final judgment is required; however, if the injury is the infirmity of the process, neither a final judgment nor exhaustion is required. *Ibid.* In *Williamson County*, the Bank claimed that the County had taken its property without just compensation when the County rezoned the property so that the Bank could not complete the development that it had planned and already begun to construct. *Id.* at 176–82, 105 S.Ct. at 3111–14. The Supreme Court held that the case was not yet ripe for judicial review because the Bank had not availed itself of the state procedures for seeking compensation. *Id.* at 194, 105 S.Ct. at 3120. The Court distinguished between a challenge to the agency's procedures, which would result, at best, in "a judgment whether the [agency's] action violated any of [plaintiff's] rights," and "resort to the procedure for obtaining variances" (corrective of the alleged problem in the case) which would "result in a conclusive determination by the [agency] whether it would allow the [plaintiff] to develop" its land. *Id.* at 193, 105 S.Ct. at 3120. The first type of challenge is not final and reviewable because it only declares the state of the plaintiff's rights. The second type of challenge does more than just determine the extent of the plaintiff's rights; it acts to affect them and, so, is final and reviewable. *Ibid.*

Although the Offutts stress their claims regarding alleged infirmities in the process by which permits were issued by Kentucky, in responding to Toyota's argument that the Offutts failed to allege a property interest sufficient on which to base their claim, the Offutts discuss two distinct injuries. First, they claim that the allegedly infirm process is an injury in itself; and second, they claim that their property has been harmed. This second injury also is mentioned in the Offutts' complaint a number of times. The former claim, as well as the claim that the plaintiffs have been denied access to information, is procedural and, thus, neither a final judgment nor exhaustion is required. The latter claim, on the contrary, is substantive and, so, a final judgment (but not exhaustion) is required. Thus, these two claims must be treated differently. They will be addressed in turn.

C

Judge Bertelsman did not make an explicit finding on the question of bias.[2] He referred only to the agency's statutory duty to uphold and enforce the laws. This approach is too perfunctory to approve.

It is true that "[s]ubmission to a fatally biased decisionmaking process is in itself a constitutional injury sufficient to warrant injunctive relief." *United Church of the Medical Center v. Medical Center Comm'n*, 689 F.2d 693, 701 (7th Cir.1982). The injury is the submission itself; the biased (or potentially biased) decision may also result in injury, but it is a separate, distinct one. *Ibid.* The administrative process "requires the appearance of fairness and the absence of a probability of outside influences on the adjudicator; it does not require proof of actual partiality." *Utica Packing Co. v. Block*, 781 F.2d 71, 77 (6th Cir.1986). However, as we shall explain, such bias must be more than a general tendency of an administrative agency to serve the executive under which it derives its authority.

---

**2.** Bias and access to information both involve procedural aspects of the case. Thus, the same reasoning with regard to finality applies to both.

The trial judge made no finding or conclusions at all regarding the access to information claim.

The Supreme Court addressed the issue of bias on the part of an administrative agency in *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). There, the Court held, first, that " '[m]ost of the law concerning disqualification because of interest applies with equal force to ... administrative adjudicators.' " *Id.* at 579, 93 S.Ct. at 1698 (quoting K. Davis, Administrative Law § 12.04). In addition, "those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Ibid.* Finally, the decisionmaker's "financial stake need not be ... direct or positive." *Ibid.* " 'The principle of disqualification applies even if the pecuniary interest is only an indirect outgrowth of a public official's desire to protect official funds.' " *United Church of the Medical Center v. Medical Center Commission*, 689 F.2d 693, 700 (7th Cir. 1982) (quoting *Meyer v. Niles Township*, 477 F.Supp. 357, 362 (N.D.Ill.1979)).

Despite this language, which seems to support the Offutts' claim, *Gibson* is entirely distinguishable from the instant case. There, a Board of Optometry was charged with bias in conducting hearings regarding license revocations. *Gibson*, 411 U.S. at 569–70, 93 S.Ct. at 1693–94. The Court found bias in that the Board members had a personal, pecuniary interest in the outcomes of license revocation proceedings. *Id.* at 578–79, 93 S.Ct. at 1697–98. The Board members' interest was deduced from the fact that they were private practitioners of optometry in the geographic area over which they presided, and so could benefit from reduced competition brought about by license revocations. *Ibid.* Thus, although this interest was not a *direct* pecuniary interest in the matter, it sufficed, the Court said, to disqualify the members of the Board from adjudicating the matters before them. *Ibid.* In the present case, the Offutts have alleged no personal pecuniary interest on the part of any particular officials who were to preside over their claims. Thus, *Gibson* simply is inapposite.

The same can be said of the other authorities the Offutts cite in support of their claim of bias. For example, in *Ward v.*

*Village of Monroeville, Ohio*, 409 U.S. 57, 59–60, 93 S.Ct. 80, 82–83, 34 L.Ed.2d 267 (1972), the Mayor of Monroeville was also the judge of the "mayor's court," which was a major source of revenue for the Village. On grounds of separation of powers, the Court reasoned that the Mayor could not be unbiased in his adjudicative duties while he was simultaneously responsible for raising the resulting revenue as part of his executive duties. *Id.* at 61, 93 S.Ct. at 83.

■ Thus, we hold to the basic principle that the entire government of a state cannot be disqualified from decisionmaking on grounds of bias when all that is alleged is a general bias in favor of the alleged state interest or policy. To the extent that other courts have implied a seemingly contrary rule, we find those cases to be sufficiently different from the instant case to justify our departure from them, if in fact our decision here represents such a departure. For example, although *United Church* appears to state a different rule, we note that, there, a specialized, separately incorporated, self-contained unit of the state was found to be biased in that decisions against claimants would result in a direct pecuniary benefit to the decisionmakers. 689 F.2d at 699. The Seventh Circuit's decision there did not undermine the entire functioning of the state's administrative arm, as we believe such a decision would do here. *See also Meyer v. Niles Township, Illinois*, 477 F.Supp. 357, 362–63 (N.D.Ill. 1979) (township supervisors cannot fairly both adjudicate claims for benefits and supervise revenue out of which benefits are paid).

■ In summary, the cases in which a bias has been found to exist, in violation of due process, involve one of two characteristics: either the decisionmakers derived a direct, pecuniary interest from decisions adverse to claimants, *United Church*, 689 F.2d 693; or the decisionmaker was engaged in both adjudicative and executive functions in violation of the principle of separation of powers. *Ward*, 409 U.S. 57, 93 S.Ct. 80; *Meyer*, 477 F.Supp. 357. Be-

cause neither of these characteristics is present in the instant case, we find no violation of due process. We decline to broaden the rule to include a finding of bias in this case because, in our estimation, to do so would severely impede the functioning of the state's government.

In the instant case, in which we are concerned with a state agency's adjudication regarding the issuance of a permit, such a rule could lead to the impossible consequence of disqualifying any branch or official of the state from adjudicating any controversy in which the state has a pecuniary or policy interest. We are asked, in effect, to rule that both the agencies and the courts of Kentucky are biased to the point of disqualification by the letter signed by the Governor and two other state officials. To do so would be to cripple the mechanisms available to the state for resolution of controversies in which it plays a part. Thus, we must affirm the decision of the district court to dismiss this case on the grounds that the Offutts have failed to state a claim of violation of due process based on alleged bias and lack of access to information.[3]

## D

■ The plaintiffs also aver that their property has been damaged by the state's actions, the issuance of permits for construction and waste disposal, and claim that this damage amounts to a deprivation of due process. In other words, without being explicit, the plaintiffs claim that the issuance of the permits and the construction of the plant works to deprive them of their property. The claim is not that the *bias* deprived them of their property; as demonstrated above, the bias, if there was any, was a separate injury. *United Church,* 689 F.2d at 701. This claim is that the plaintiffs have suffered an injury to their property as a result of the issuance of permits, a regulatory act, a "taking" of some sort.

Precedent indicates that this type of substantive challenge does require a final decision by the state before an injury can be alleged. In *Williamson County,* the Court made clear that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State." 473 U.S. at 195, 105 S.Ct. at 3121. There is no injury to complain of until the state's action is "complete." *Ibid.* The Supreme Court repeated this caveat in a number of cases in which plaintiffs alleged regulatory takings, or temporary regulatory takings, *ibid.; San Diego Gas and Electric v. City of San Diego,* 450 U.S. 621, 630–31, 101 S.Ct. 1287, 1292–93, 67 L.Ed.2d 551 (1981); *Pennell v. City of San Jose,* — U.S. —, 108 S.Ct. 849, 856, 99 L.Ed.2d 1 (1988); *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 2566–68, 91 L.Ed.2d 285 (1986); until, finally, the Court reached a case that was ripe for decision on the merits. *First English Evangelical,* 482 U.S. at —, 107 S.Ct. at 2384. In these cases, the Court repeatedly explained that "an essential prerequisite to [the] assertion [of a claim of regulatory taking] is a final and authoritative determination" by the regulatory agency, stressing the factual nature of such inquiries. *MacDonald, Sommer & Frates,* 477 U.S. at 348, 106 S.Ct. at 2566. "Given the 'essentially ad hoc, factual inquir[y]' involved in the takings analysis, *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979), we have found it particularly important in takings cases to adhere to our admonition that 'the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a

---

**3.** Regarding the claim of denial of access to information, in that we have found that the Agency was not *per se* biased, it follows that the Offutts were not denied any information based solely on such bias. In other words, the harm of submitting a question, or a request for information, to a biased tribunal has not occurred here. Thus, without a request for information and a subsequent denial by the Agency, the Offutts can show no injury. *Williamson County,* 473 U.S. at 186, 105 S.Ct. at 3116. Although we need not decide this issue, we note that the state contends that the information the Offutts seek could be acquired through the proper administrative procedures.

decision necessary.' " *Pennell*, —— U.S. at ——, 108 S.Ct. at 856 (quoting *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.,* 452 U.S. 264, 294–95, 101 S.Ct. 2352, 2369–70, 69 L.Ed.2d 1 (1981)). " '[T]he federal constitutional question embraces not only a taking, but a taking on payment of just compensation. A state judgment is not final unless it covers both aspects of that integral problem.' " *San Diego Gas,* 450 U.S. at 633, 101 S.Ct. at 1294 (quoting *North Dakota Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 163, 94 S.Ct. 407, 412, 38 L.Ed.2d 379 (1973)).

The party claiming a constitutional violation must prove that the available state remedies are inadequate. *National Communication Systems, Inc. v. Michigan Public Service Commission,* 789 F.2d 370, 372 (6th Cir.1986). This Circuit has noted that this concept is analogous to the line of procedural due process cases beginning with *Parratt v. Taylor. Id.* (citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). *See also Ramsey v. Board of Education of Whitley County,* 844 F.2d 1268 (6th Cir.1988).

Kentucky provides a cause of action for inverse condemnation when a citizen alleges that his property has been taken through the exercise of the state's regulatory powers. *Commonwealth v. Stearns Coal and Lumber Co.,* 678 S.W.2d 378 (Ky.1984). Thus, the plaintiffs have a state remedy to address the alleged damage to their property; and a suit under 42 U.S.C. § 1983 is inappropriate until a final decision of the state in an inverse condemnation action is entered against the plaintiffs. Indeed, on the federal level, the "availability of a state inverse condemnation action, absent a showing that such action is inadequate to protect constitutional rights, is sufficient to satisfy the mandates of the Fifth Amendment." *Union Pacific R.R. Co. v. State of Idaho,* 663 F.Supp. 75, 76 (D.Idaho 1987).

Thus, we conclude that the Offutts' claims, whether couched in terms of the adequacy of the process or harm to the Offutts' property, are without merit. The question of bias cannot be raised as an attack on the entire decisionmaking apparatus of the state, leaving the state without a way to resolve disputes in which it has any interest. The state, in this case, has not been given an opportunity to affect the Offutts' rights or property. We decline to condemn a process which has not occurred, or redress an injury which has not been suffered. Therefore, we AFFIRM.

