Frances UTTILLA, Suzanne Colsey, J.P. Colsey, Betty Anderson Judy Neal, and Kevin Lofton, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

CITY OF MEMPHIS, City of Nashville, City of Knoxville, Tennessee Highway Department, and J. Bruce Saltsman, in his official capacity as Commissioner of the Tennessee Highway Department, Defendants.

No. 98–2729.

United States District Court, W.D. Tennessee.

April 2, 1999.

Sherri A. McDonough, L. Oneal Sutter, Harrill & Sutter PLLC, Little Rock, AR, for plaintiffs.

Sara L. Hall, Charmiane G. Claxton, City Attorneys Office, Memphis, TN, for City of Memphis, defendant.

John L.* Kennedy, Kimberly M. Frayn, Metropolitan Department of Law, Nashville, TN, for City of Nashville, defendant.

Michael S. Kelley, Sharon E. Boyce, City of Knoxville, Knoxville, TN, for City of Knoxville, defendant.

Michael A. McMahan, Kenneth O. Fritz, City Attorney's Office, Chattanooga, TN, for City of Chattanooga, defendant.

Leslie Ann Bridges, State Attorney General's Office, Civil Litigation and State Services Div., Nashville, TN, for Tennessee Highway Department, defendant.

### ORDER ON TENNESSEE HIGHWAY DEPARTMENT'S MOTION TO DISMISS[1]

DONALD, District Judge.

Before this court is Defendant's, Tennessee Highway Department ("THD"),

---

1. To avoid confusion, the court has styled this order as one disposing of Tennessee Highway Department's motion to dismiss. In actuality,

Plaintiffs have already voluntarily dismissed the Tennessee Highway Department ("THD")

motion to dismiss Plaintiffs', Frances Uttilla, Suzanne Colsey, J.P. Colsey, Betty Anderson, Judy Neal, and Kevin Lofton, complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant contends that Plaintiffs' complaint constitutes a suit against the State of Tennessee and, as such, is barred by the Eleventh Amendment to the Constitution. Defendant further contends that Congress' attempt to abrogate the States' Eleventh Amendment immunity exceeded its constitutional authority and therefore cannot serve as a valid basis to strip Tennessee of its immunity.

Plaintiffs bring this suit on behalf of themselves and all others similarly situated alleging that Defendants, City of Memphis, City of Nashville, City of Knoxville, City of Chattanooga, and the THD violated their rights under Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 ("ADA") and the regulations implementing that statute found at 28 C.F.R. Part 35, and section 794 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796 ("Rehabilitation Act") and the regulations implementing that statute found at 45 C.F.R. Part 45. Plaintiffs allege that Defendants have failed to: 1) conduct self-evaluations of their existing facilities, services, policies and practices which receive federal funds in accordance with the Rehabilitation Act, 2) develop a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, 3) reasonably accommodate disabled individuals in the construction of new facilities or alteration of old facilities and 4) make reasonable modifications to current policies and procedures in order to give meaning to the ADA, such as enacting and enforcing ordinances prohibiting obstructions of sidewalks. Plaintiffs request relief from this allegedly discriminatory treat-

ment in the form of a declaratory judgment finding Defendants in violation of the ADA and the Rehabilitation Act and a court order requiring Defendants to: 1) undergo a proper self-evaluation of structures, policies, and procedures upon notice and hearing, 2) develop and implement a proper transition plan within a reasonable time, 3) develop and implement a schedule for curb ramps within a reasonable time, 4) make all changes required under federal law at Defendants' facilities, and 5) provide accessible parking meters or reserved on-street parking. Moreover, Plaintiffs also request a reasonable attorney's fee and all costs incurred in furthering this litigation.

For the following reasons, the court reaffirms Plaintiffs' voluntary dismissal of the THD and denies the THD's motion to dismiss as to the Commissioner of the THD.

## I. PROCEDURAL HISTORY

Due to the nature of the issues raised by this motion to dismiss, the court deems it appropriate to review that portion of the procedural history relevant to Plaintiffs' claims against Defendant. On August 20, 1998, Plaintiffs filed a complaint alleging that their causes of action were brought on behalf of themselves and the class of individuals similarly situated to the named plaintiffs. Defendant filed this motion to dismiss on October 19, 1998. On December 28, 1998, Plaintiffs filed a motion to amend their complaint by substituting the Commissioner of the THD, J. Bruce Saltsman, in his official capacity as defendant in lieu of the THD. On December 30, 1998, this court issued an order granting Plaintiffs leave to amend their complaint as requested. On January 11, 1999, Plaintiffs filed an amended complaint substituting Commissioner Saltsman as the named defendant instead of the THD.

through their earlier request to amend their complaint. In their request, Plaintiffs asked this court to substitute J. Bruce Saltsman, in his official capacity as Commissioner of the

THD, as a named Defendant in lieu of the THD. On December 30, 1998, the court issued an order granting this request.

## II. STANDARD

The appropriate standard to employ when reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction turns upon the nature of the motion. If the 12(b)(1) motion attacks the plaintiff's complaint on its face, the court is required to consider the allegations of the complaint as true. *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996). When responding to a facial attack on subject matter jurisdiction, the plaintiff's burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). On the contrary, the plaintiff can "survive the motion by showing any arguable basis in law for the claim made." *Id.* However, if the 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, apart from the pleadings, "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* Rather, the plaintiff then has the burden to prove the existence of jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990). Moreover, when the Rule 12(b)(1) motion is a factual attack, the court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* at 325. Ultimately, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

Here, Defendant attacks the sufficiency of Plaintiffs' complaint based on the legal doctrine of Eleventh Amendment immunity. Because this motion to dismiss is a facial attack on Plaintiffs' complaint, the court will employ the familiar Rule 12(b)(6) motion to dismiss standard as set forth below. *See Ohio Nat'l Life Ins. Co.* at 325 (referring to the standard of review for Rule 12(b)(1) facial attacks as similar to that employed under 12(b)(6) motions to dismiss).

Dismissal under Rule 12(b)(6) is appropriate where there is no set of facts which would entitle the plaintiff to recover. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.1989). In reviewing a defendant's Rule 12(b)(6) motion to dismiss, a district court should construe the complaint in the light most favorable to the plaintiff, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). If an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). As the Supreme Court said in *Hishon v. Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, at 73, 104 S.Ct. 2229.

A district court may not grant a defendant's Rule 12(b)(6) motion to dismiss based on its disbelief of the plaintiff's factual allegations. *In Re Sofamor Danek Group, Inc.*, 123 F.3d 394 (6th Cir.1997), *cert. denied., Murphy v. Sofamor Danek Group*, —— U.S. ——, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). It is not the court's function to weigh evidence or evaluate the credibility of witnesses. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). Rather, the court should accept all well-pleaded facts as true and not consider matters outside the pleadings. *Hammond*, at 175.

Although a court reviewing a Rule 12(b)(6) motion to dismiss should construe the plaintiff's complaint liberally, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid* at 436. Rather, a plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* Accordingly, a district court need not accept

as true conclusions of law or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

## III. ANALYSIS

### A. Eleventh Amendment Immunity

Defendant contends that Plaintiffs' claims against it under the ADA and the Rehabilitation Act of 1973 are barred in this court because the Eleventh Amendment to the Constitution forbids federal courts from exercising jurisdiction over suits brought by private parties against an unconsenting State. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

By its own terms, this amendment appears to only prohibit residents of another State or a foreign country from bringing suit against a State in federal court. However, the United States Supreme Court ruled in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) that the Eleventh Amendment also deprives federal courts of jurisdiction over causes of action brought against an unconsenting State by its own citizens. *Hans*, at 18, 20, 10 S.Ct. 504. The Court in *Hans* invoked the time-honored principle of sovereign immunity as justification for extending the jurisdictional bar created by the Eleventh Amendment beyond its literal words. *Id.* at 10–12, 16, 10 S.Ct. 504.

The policy of protecting state sovereignty continues to serve as the driving force behind the Eleventh Amendment. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 63, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 97–98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) in stating that "the Eleventh Amendment reflects 'the fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Article III.'" Under this principle, a State cannot be sued by an individual without its consent. *Hans*, at 13, 10 S.Ct. 504. Accordingly, States have almost complete control over whether they can be sued and where such a suit can take place.

The only exception to the immunity preserved by the Eleventh Amendment occurs when Congress passes legislation pursuant to its enforcement powers under the Fourteenth Amendment.[2] *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). This result obtains because the ratification of the Fourteenth Amendment effectuated a change in the balance of power between the States and the Federal Government. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 453–55, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The Fourteenth Amendment, which obligates States to give all citizens due process of law and the equal protection of the laws, explicitly empowers Congress to pass legislation for the purpose of enforcing these obligations upon the States. *See* U.S. CONST amend. XIV § 5. As a result of the Fourteenth Amendment, "the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of s 5 of the Four-

---

**2.** The Fourteenth Amendment states in relevant part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

> State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> . . .
>
> The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV §§ 1, 5.

teenth Amendment." *Fitzpatrick*, at 456, 96 S.Ct. 2666. Thus, Congress can pass legislation abrogating state sovereign immunity when it properly exercises its enforcement powers under section five of the Fourteenth Amendment. *See Seminole Tribe of Florida*, at 59, 116 S.Ct. 1114; *Atascadero*, at 238, 105 S.Ct. 3142; *Pennhurst State School & Hosp.*, at 99, 104 S.Ct. 900.

Although these enforcement powers are broad in nature[3], they are not without limit. Under *Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), an Act of Congress passed pursuant to the Fourteenth Amendment is "appropriate legislation" within the meaning of section 5 only if it 1) was enacted to enforce the Equal Protection Clause, 2) is plainly adapted to that end, and 3) is consistent with the letter and spirit of the Constitution. *Morgan*, at 651, 86 S.Ct. 1717. The range of legislation allowed under section 5 is also limited by the nature of Congress' enforcement power. In *South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966), the Supreme Court defined this power as "remedial" in nature. See *Katzenbach*, at 326, 86 S.Ct. 803. In *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Court characterized Congress' Fourteenth Amendment enforcement powers as "corrective and preventive" and determined that those powers did not include "the power to decree the substance of the Fourteenth Amendment's restrictions on the States." *Flores*, at 2164–66, 117 S.Ct. 2157. The *Flores* Court made a distinction between the power to determine the parameters of a constitutional right and the power to legislatively enforce that right. *Id.* at 2164. In support of this distinction, the Court reasoned

that allowing Congress to determine what constitutes a violation of the Fourteenth Amendment would make it an interpreter of the amendment, not an enforcer of its provisions. *Id.* Such a result would upset the delicate balance of power created by our tripartite system of national government. Id. at 2166. Although the Court conceded that the distinction between remedial and substantive legislation may not be easy to discern and that Congress should be granted great leeway in making this distinction, the Court remained resolute in its insistence that the distinction be preserved. *Id.* at 2164. Pursuant to this end, the Court offered guidance to lower courts by explaining that legislation passed by Congress under section 5 of the Fourteenth Amendment must possess "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* If an Act of Congress fails to satisfy this standard, it is unconstitutional and cannot create liability for any party. *Id.* at 2172 (striking down the Religious Freedom Restoration Act grant where it purported to grant greater protection to religious freedom under the First Amendment's Free Exercise Clause than the Supreme Court had in its *Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) decision).

The limits of Congress' enforcement powers under the Fourteenth Amendment come into sharper focus in the context of a Congressional attempt to abrogate the States' Eleventh Amendment immunity. In *Seminole Tribe of Florida*, the Court reaffirmed its two-prong test for determining whether Congress has appropriately abrogated the States' sovereign immunity

---

**3.** In *Ex Parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1879), the Supreme Court described the enforcement powers of Congress under the Fourteenth Amendment in the following terms:

Whatever legislation is appropriate, that is, adapted to carry out the objects the amendments have in view, whatever tends to enforce submission to the prohibitions they contain, and to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion, if not prohibited, is brought within the domain of congressional power.

*Ex Parte Virginia*, at 345–46.

pursuant to the Fourteenth Amendment: 1) whether Congress has unequivocally expressed an intent to abrogate Eleventh Amendment immunity and 2) whether the legislation in question is a valid exercise of power. *Seminole Tribe of Florida,* at 55, 116 S.Ct. 1114; *accord Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Legislation cannot satisfy the first prong unless Congress' intent to abrogate the States' immunity. is obvious from "a clear legislative statement." *Id.* (quoting *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)). The second prong requires a court to assess whether the Act in question was "passed pursuant to a constitutional provision granting Congress the power to abrogate." *Id.* at 59, 116 S.Ct. 1114. Since the Fourteenth Amendment is the only constitutional provision authorizing Congress to remove the immunity otherwise enjoyed by the States[4], any legislation creating a private cause of action against the States must

have been intended to remedy or prevent violations of the Fourteenth Amendment. *See Coger v. Board of Regents,* 154 F.3d 296, 301 (6th Cir.1998).

The extent of Congress' enforcement powers under the Fourteenth Amendment is the subject of Defendant's motion to dismiss in the instant case. Defendant argues that this court lacks jurisdiction over Plaintiffs' claims under the ADA and the Rehabilitation Act because Congress overstepped its enforcement powers under the Fourteenth Amendment when it made the States amenable to individual lawsuits. Defendant's argument is built upon the premise that disabled individuals are not a "suspect class" for purposes of the Fourteenth Amendment and are therefore not entitled to heightened protection under the Equal Protection Clause.[5] Defendant further argues that state action discriminating against the physically disabled is only subject to rational basis review. Defendant contends that the ADA and the Rehabilitation Act violate the holding of *Flores*

4. Prior to *Seminole Tribe of Florida,* the Court's Eleventh Amendment jurisprudence allowed Congress to abrogate the States' immunity by invoking its Commerce Clause powers under Article I, Section 8 of the Constitution. *See Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). In *Union Gas Co.,* the Court reasoned that the States had yielded a portion of their sovereign immunity by ratifying a Constitution which gave Congress the power to regulate commerce among the several states. *Id.* at 14–15, 109 S.Ct. 2273. The *Union Gas Co.* Court concluded that "the power to regulate commerce includes the power to override the States' immunity from suit." *Id.* at 14, 109 S.Ct. 2273. However, in *Seminole Tribe of Florida,* the Court noted that the rationale used in *Fitzpatrick* to support Congress' power to abrogate the States' sovereign immunity was inapplicable to legislation passed pursuant to the Commerce Clause. *See Seminole Tribe of Florida,* at 63–66, 116 S.Ct. 1114. Unlike the Fourteenth Amendment which was passed subsequent to the Eleventh Amendment and could therefore be reasonably construed as paring the States' sovereign immunity, the Commerce Clause preceded the Eleventh Amendment and could not be invoked as a restriction for a subsequent amendment to the Constitution. *Id.* at 66, 116 S.Ct. 1114. The Court also noted that

allowing Congress to invoke its expansive Commerce Clause powers to abrogate the States' Eleventh Amendment immunity would give the legislative branch of government free reign to expand the boundaries of Article III jurisdiction. *Id.* at 63–66, 116 S.Ct. 1114. Based upon the inapplicability of *Fitzpatrick* and the Court's unwillingness to give·the keys of Article III jurisdiction to Congress, the Court concluded that *Union Gas Co.* was wrongly decided and should be overruled. *Id.* at 66, 109 S.Ct. 2273.

5. Defendant relies upon the Court's decision in *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) to support this proposition. In *City of Cleburne,* the Court refused to extend quasi-suspect classification to mentally handicapped individuals for purposes of Equal Protection analysis. *City of Cleburne,* at 442–47, 105 S.Ct. 3249. Instead, the Court announced that legislation discriminating against the mentally handicapped must be rationally related to a legitimate governmental purpose, a level of scrutiny commonly referred to as the "rational basis" test. *Id.* at 446, 105 S.Ct. 3249. Under the rational basis test, a statute will not be deemed unconstitutional unless the plaintiff can show that the discrimination in question was arbitrary or irrational. *Id.*

by granting special treatment to disabled persons and creating a substantive right to preferential treatment which was heretofore unknown under the Supreme Court's Equal Protection jurisprudence. Moreover, Defendant contends that Congress exceeded its enforcement powers by stripping the States of their immunity where there had been no finding that the States had acted or threatened to act irrationally toward their disabled citizens.

As noted by Defendant, there is a split of authority among the federal courts as to whether Congress overstepped its enforcement powers under the Fourteenth Amendment when it abrogated the States' sovereign immunity with respect to lawsuits brought under the ADA and the Rehabilitation Act. *Compare Clark v. California*, 123 F.3d 1267, 1270 (9th Cir.1997), *cert. denied, Wilson v. Armstrong,* — U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998); *Kimel v. State Bd. of Regents*, 139 F.3d 1426, 1433 (11th Cir.1998), *cert. granted, Kimel v. Fla. Bd. of Regents,* — U.S. ——, 119 S.Ct. 901, 142 L.Ed.2d 901 (1999); *Autio v. AFSCME, Local 3139*, 157 F.3d 1141 (8th Cir.1998) (affirming *Autio v. Minnesota*, 968 F.Supp. 1366 (D.Minn. 1997)); *Coolbaugh v. State of Louisiana*, 136 F.3d 430, 432–38 (5th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998); *Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481, 487 (7th Cir.1997); *Thompson v. Colorado*, 29 F.Supp.2d 1226, 1232–36 (D.Colo.1998) *with Kilcullen v. New York State Dep't of Transp.,* No. 96–CV–2023, 1999 WL 24733 (N.D.N.Y. Jan. 19, 1999); *Hedgepeth v. Tennessee,* No. 97–2825–TUV, 1998 WL 966124 at *5–8 (W.D.Tenn. Dec.29, 1998); *Garrett v. Board of Trustees* 989 F.Supp. 1409 (N.D.Ala.1998). Although the United States Court of Appeals for the Sixth Circuit has not squarely addressed this issue,

it is scheduled to hear four cases, consolidated for purposes of submission only, which raise the question of whether Congress exceeded its enforcement powers under the Fourteenth Amendment when it created private causes of action against the States under the ADA and Rehabilitation Act.[6] Nevertheless, closer scrutiny proves this question to be a red herring in the instant case.

## B. Dismissal of the THD

■ There is no need for the court to address whether the Eleventh Amendment would bar Plaintiff's ADA and Rehabilitation Act causes of action against the THD as an agency of the State of Tennessee. Although Plaintiffs have not technically filed a motion to dismiss the THD, they have, in effect, voluntarily dismissed their claims against the THD under the ADA and the Rehabilitation Act. In Plaintiffs' motion to amend their original complaint, they stated, "[p]laintiffs wish to amend their Complaint to *substitute* the Commissioner of the Tennessee Highway Department, J. Bruce Saltsman, in his official capacity as the named Defendant *in lieu of the Tennessee Highway Department*." (Pls.' Mot. to Amend ¶ 1) (emphasis added). This court used the same language in its order granting Plaintiffs' motion to amend. Subsequent to this order, Plaintiffs filed an amended complaint identifying Commissioner Saltsman as the sole defendant affiliated with the State of Tennessee. The most reasonable construction of a plaintiff's request to substitute Defendant A for Defendant B would lead this court to believe that the plaintiff no longer seeks to recover from Defendant B. Accordingly, this court concludes that Plaintiffs manifested their intent not to pursue any causes of action against the THD

**6.** Those cases are: *Satterfield v. Tennessee,* No. 3:97–cv–0478, 1998 U.S. Dist. LEXIS 21410 (E.D.Tenn. Mar. 31, 1998), *appeal docketed,* No. 98–5765 (6th Cir. June 9, 1998); *Pomeroy v. Western Michigan Univ.,* No. 4:96–cv–135 (W.D.Mich. June 16, 1997), *appeal docketed,* No. 97–1751 (6th Cir. July 7, 1998);

*Wright v. Lima Correctional Inst.,* No. 3:95–cv–7452 (N.D.Ohio April 17, 1997), *appeal docketed,* No. 97–3587 (6th Cir. June 11, 1997); *Nihiser v. Ohio Envtl. Protection Agency,* 979 F.Supp. 1168 (S.D.Ohio 1997), *appeal docketed,* No. 97–3933 (6th Cir. August 19, 1997).

when they requested the court to substitute Commissioner Saltsman for the THD. To further fortify this conclusion, the court notes that Plaintiffs' request indicated their desire to have Commissioner Saltsman named as the defendant in lieu of the THD. The phrase "in lieu of" means "in place of" or "instead of." This language demonstrates that the clear intent of Plaintiffs' request was to have Commissioner Saltsman named as a defendant in place of the THD. Once that request was granted, Plaintiff no longer had any causes of action against the THD.

To the extent that Plaintiffs attempt to maintain their suit against the THD under the ADA and the Rehabilitation Act, Defendant's motion to dismiss is granted.

### C. Eleventh Amendment Immunity as to the Commissioner of the THD

■ While suits against unconsenting states are barred by the Eleventh Amendment absent appropriate Congressional abrogation, individuals are allowed in certain circumstances to sue state officers acting in their official capacities. The seminal case governing suits against state officers is *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In that case, the plaintiffs were stockholders of railroad companies who sought a federal court injunction against enforcement of Minnesota's schedule of rates for rail transport of merchandise.[7] One of the issues addressed by the *Young* court was what effect, if any, did the Eleventh Amendment have upon the shareholders' suit for injunctive relief against the State Attorney General's enforcement of the rates. *See Young*, at 149, 28 S.Ct. 441. After reviewing the relevant case law, the Court distinguished between suits brought against

state officers personally and those brought against the State itself. *Id.* at 159–60, 28 S.Ct. 441. The Court determined that state officers who "are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, . . . may be enjoined by a Federal court of equity from such action."[8] *Id.* at 156, 28 S.Ct. 441. Such causes of action were allowable because the unconstitutional actions of state officers could not, by their very nature, be clothed with the imprimatur of the State. *Id.* at 159–60, 28 S.Ct. 441. Without the State's imprimatur, the suit against the officer could not be deemed a suit against the State. *Id.* at 160, 28 S.Ct. 441.

Several subsequent United States Supreme Court decisions have clarified the *Ex parte Young* doctrine. In *Ford Motor Co. v. Department of Treasury of State of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the Court held that an action against a state officer is still barred by the Eleventh Amendment when the action "is in essence one for the recovery of money from the state." *Ford Motor Co.*, at 464, 65 S.Ct. 347. In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court distinguished between suits against state officers for retroactive relief and those for prospective, injunctive relief. *Edelman*, at 664–65, 94 S.Ct. 1347. The Court held that a court injunction requiring state officials to pay government benefits wrongfully withheld constituted a suit against the State and was therefore prohibited by the Eleventh Amendment. *Id.* at 664–65, 668, 94 S.Ct. 1347. The Court refused to apply *Ex parte Young* to an injunction requiring a retroactive payment of accrued benefits

---

7. Prior to the setting of rates by Minnesota's railroad commission, the railway companies had charged their customers higher tariffs and charges than what was now permitted by law. The shareholders of those railway companies argued that the State's setting of rates deprived them of property without due process of law and constituted unequal protection of the laws.

8. The Court did note that the ability to sue a state officer was predicated upon the officer's relationship to the allegedly unconstitutional act. *Young*, at 157, 28 S.Ct. 441. A state officer can be enjoined from enforcing a statute only if he has "some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.*

because the funds would be paid, not out of the pocket of the state official, but from the treasury of the State. *Id.* at 664–65, 94 S.Ct. 1347. The *Edelman* Court found that the district court's injunction requiring retroactive payment of benefits resembled the suit for money damages against the State of Indiana which was barred by the Eleventh Amendment in *Ford Motor Co. Id.* at 665, 94 S.Ct. 1347. The Court went to great lengths to explain the important distinction between retroactive relief against state officials which will be paid from the state treasury and the type of prospective relief allowed in *Ex parte Young. Id.* at 666–68, 94 S.Ct. 1347. An injunction compelling a state official to conform his future conduct to the requirements of federal law does not intrude upon a State's sovereignty as an order compelling that same official to use the State's general revenues to make restitution for past wrongs does. *Id.* at 665, 94 S.Ct. 1347.

The distinction between permissible suits against state officials for prospective relief and impermissible suits against state officials for retroactive relief will not always be a clear one. In *Edelman,* the Court conceded that "the difference between the type of relief barred by the Eleventh Amendment and that permitted under Ex parte Young will not in many instances be that between day and night." *Id.* at 667, 94 S.Ct. 1347. The difficulty arises because injunctions requiring state officials to conform their conduct to the Constitution or federal law will often necessitate expenditures from the state treasury. *Id.* at 667–68, 94 S.Ct. 1347 (citing cases where compliance with injunctions had an impact on state treasuries). However, these expenditures are allowed under the Eleventh Amendment because they are "the necessary result of compliance with decrees which by their terms were prospective in nature." *Id.* at 668, 94 S.Ct. 1347. In *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), the Court upheld a district court's injunction requiring the State of Michigan to help defray the costs of implementing a city-wide desegregation plan. *Milliken,* at 290–91, 97 S.Ct. 2749. The Court rejected the State's claim that the injunction violated the holding of *Edelman* because it would require money from the State's coffers. *Id.* at 288–90, 97 S.Ct. 2749. The Court explained that the prospective compliance exception "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Id.* at 289, 97 S.Ct. 2749.

The *Ex parte Young* doctrine was further clarified by the Court in *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). In *Coeur d'Alene,* the Court reversed a Ninth Circuit ruling allowing a Native American tribe to maintain its claims for declaratory and injunctive relief against the State of Idaho. *Coeur d'Alene,* at 2043. The Court's opinion reviewed the historical evolution of the *Ex parte Young* doctrine and explained the rationale supporting its existence. The Court rejected a mechanical application of the *Ex parte Young* doctrine, stating:

> [t]o interpret Young to permit a federal court-action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term in Seminole Tribe, that Eleventh Amendment immunity represents a real limitation on a federal court's federal question jurisdiction.

*Id.* at 2034.

Instead, the Court urged lower courts to engage in a case-by-case, fact-intensive analysis of the nature and effect of the lawsuit in question. *Id.* at 2038–39. The purpose of this inquiry is to balance the need to promote the supremacy of federal law with the equally compelling need to accommodate the constitutional immunity of the States. *Id.* at 2038. Accordingly,

this court must look beyond the caption of Plaintiffs' complaint to determine whether the *Ex parte Young* doctrine should be invoked here to allow Plaintiffs' suit against Commissioner Saltsman to go forward.

Since Plaintiffs substituted Commissioner Saltsman as a named defendant in lieu of the THD, Plaintiffs' causes of action are asserted, in part, against Commissioner Saltsman in his official capacity. Unlike the plaintiffs in *Edelman*, Plaintiffs do not seek any retroactive monetary damages which would ultimately be paid from the state treasury. Rather, Plaintiffs request a declaratory judgment finding Commissioner Saltsman to be in violation of the ADA and the Rehabilitation Act and a prospective injunction requiring Commissioner Saltsman to act in conformity with the requirements of the ADA and Rehabilitation Act. Ordinarily, an allegation of an on-going violation of federal law coupled with a request for prospective relief is sufficient to invoke the *Ex parte Young* doctrine. *See Coeur d'Alene*, at 2040. Here Plaintiffs have alleged that Commissioner Saltsman has violated and continues to violate the provisions of the ADA and the Rehabilitation Act and request nothing more than a declaratory judgment in their favor and a prospective injunction requiring adherence to federal law. Where a plaintiff brings suit against an individual state officer in federal court, there is a presumption in favor of federal court jurisdiction.[9] *Id.* at 2038. A court should not set aside this presumption unless there are "special factors counselling hesitation." *Id.* at 2039 (quoting *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)). This court

is aware of no special factors which would counsel against allowing this suit to go forward. Congress has not created a remedial scheme designed for the exclusive enforcement of Plaintiffs' rights under the ADA or Rehabilitation Act. *Compare with Seminole Tribe*, at 74–76, 116 S.Ct. 1114 (finding that Congress had created a remedial scheme for the enforcement of a particular federal right and refusing to supplement that scheme with a judicially-created remedial mechanism). Quite to the contrary, Congress authorized suits like the present one as an appropriate means to vindicate the rights granted under the ADA and Rehabilitation Act. *See* 29 U.S.C. § 794(a) (1999); 42 U.S.C. §§ 12133 & 12188 (1995); and 28 C.F.R. Part 35, App. A, Subpart F. Moreover, in the event that Plaintiffs are successful in proving their case, requiring Commissioner Saltsman to comply with federal law will not be so intrusive upon the sovereignty of the State of Tennessee as to "upset the balance of federal and state interests that it [the *Ex parte Young* decision] embodies." *Papasan v. Allain*, 478 U.S. 265, 277, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

Based on an analysis of the facts presented in this case, the court finds that the *Ex parte Young* doctrine has been appropriately invoked as a justification for not dismissing Plaintiffs' claims for declaratory and prospective injunctive relief against Commissioner Saltsman in his official capacity. The court therefore denies Defendant's motion to dismiss on the grounds of Eleventh Amendment immunity to the extent that it was or is now intended to request dismissal of Plaintiffs' suit against Commissioner Saltsman in his official capacity with the THD.

---

9. The Court stated:

Our precedents teach us, nevertheless, that where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar. Indeed, since Edelman we have consistently allowed suits seeking prospective injunctive relief based on federal violations to proceed. Last Term, however, we did not allow a suit raising a federal question to proceed based on Congress' provision of an alternative review mechanism. Whether the presumption in favor of federal-court jurisdiction in this type of case is controlling will depend upon the particular context.

*Coeur d'Alene*, at 2038. (citations omitted).

## IV. ORDER

Based on the foregoing, Defendant's Rule 12(b)(1) Motion to Dismiss Plaintiffs' claims under the ADA and the Rehabilitation Act is **DENIED** to the extent it was based on the assertion of Eleventh Amendment immunity and was or is now intended to secure dismissal of Plaintiffs' claims against Commissioner Saltsman in his official capacity with the THD. Plaintiffs' voluntary dismissal of THD is **REAFFIRMED.**

**IT IS SO ORDERED.**