Edgar JOHNSON, Plaintiff,

v.

EQUITY TITLE & ESCROW CO. OF MEMPHIS, LLC, Carey Califf, Steven Winkel, et al., Defendants.

No. 03–2567.

United States District Court, W.D. Tennessee, Western Division.

March 6, 2007.

Sapna V. Raj, Webb A. Brewer, Memphis Area Legal Services, Inc., Memphis, TN, for Plaintiff.

John S. Golwen, Kristen C. Wright, Mary Katherine Hovious, Bass Berry & Sims PLC, Virginia Patterson Bozeman, W. Timothy Hayes, Jr., The Hardison Law Firm, Memphis, TN, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS OF DEFENDANTS EQUITY TITLE & ESCROW COMPANY OF MEMPHIS, LLC, CAREY CALIFF, AND STEVEN WINKEL

DONALD, District Judge.

Before the Court is the motion (D.E.# 154) of Defendants Equity Title & Escrow Co. of Memphis, LLC ("Equity Title"), and its principals, Carey Califf and Steven Winkel, (collectively, "Defendants") to dismiss the complaint of Edgar Johnson ("Plaintiff") pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff claims injury resulting from Defendants' alleged violations of (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.;* (2) the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.;* (3) the Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.;* (4) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.;* (5) the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.;* and (6) the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47–18–101, *et seq.* Plaintiff additionally asserts Tennessee state law claims for fraud, conversion, negligent misrepresentation, breach of fiduciary duty, breach of contract, conspiracy, and unconscionability. Defendants contend that the complaint should be dismissed as to them because Plaintiff has failed to state an actionable claim against them. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons stated herein, the Court grants in part and denies in part Defendants' motion to dismiss.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to file a motion to dismiss for a plaintiff's failure to state a claim upon which relief can be granted. Motions to dismiss under Fed.R.Civ.P. 12(b)(6) are designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when no set of facts exists which would entitle the plaintiff to recover. *Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir.1989). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

In reviewing a defendant's Rule 12(b)(6) motion to dismiss, a district court should construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). If an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991).

■ A district court may not grant a defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss based on its disbelief of the plaintiff's factual allegations. *In Re Sofamor Danek Group, Inc.*, 123 F.3d 394 (6th Cir.1997), *cert. denied*, *Murphy v. Sofamor Danek Group*, 523 U.S. 1106, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). It is not the court's function to weigh evidence or evaluate the credibility of witnesses. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). A court will not consider any disputed questions of fact at this stage. *Barnes v. Winchell*, 105 F.3d 1111, 1114 (6th Cir.1997). Rather, the court should accept all well-pleaded facts as true and not consider matters outside the pleadings. *Hammond*, 866 F.2d at 175. The United States Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke*, 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis*, 135 F.3d at 405 (6th

Cir.1998). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## II. FACTUAL ALLEGATIONS[1]

Mr. Johnson asserts that Defendants, in conjunction with the remaining defendants in this case, engaged in predatory lending practices and a predatory lending scheme. Mr. Johnson contends that all defendants acted in concert to lure unsuspecting and unsophisticated African–American homeowners into exploitative mortgage loans to purportedly consolidate debt and/or finance home repairs or home improvement work.[2]

At the time he filed his complaint, Mr. Johnson was an 81–year old African–American man living on a fixed income. (Am.Compl.¶ 14.) When the transactions giving rise to this litigation took place he owned a home located in Memphis, Tennessee, which was completely paid for with no encumbering liens. *Id.* ¶ 15.

In July 2002, Mr. Johnson was approached by Memphis Financial Services ("MFS") representatives who were soliciting customers for home improvement work and debt consolidation at a local grocery store. *Id.* ¶¶ 17–18. Mr. Johnson gave the representatives his contact information and received a form to fill out. *Id.* ¶¶ 19–20. Mr. Johnson returned the form by

---

**1.** The factual allegations are taken from the complaint and are presumed to be true for purposes of the instant motion only.

**2.** Since Plaintiff's complaint includes claims for violations of RICO and for conspiracy, the factual allegations made in the complaint concerning all the defendants must be examined in order to analyze Defendants' arguments in support of their motion to dismiss.

mail and was soon contacted by Timothy Crump, a Home Tech/MFS employee.[3] *Id.* ¶ 21. Mr. Crump prepared a contract for Johnson's home improvements and told Mr. Johnson that he could receive a loan with a 5–6% interest rate to fund the repairs. *Id.* Mr. Crump also inquired as to whether Mr. Johnson had any outstanding debts that he wished to have consolidated. *Id.* ¶ 23. Mr. Johnson informed him that he had outstanding Sears and Goldsmith's bills, but did not want to apply for additional money to pay these bills off. *Id.* At no time did an appraiser visit Mr. Johnson's home. *Id.* ¶ 70.

During Mr. Crump's visit, Mr. Johnson also signed a loan application for MFS and Defendants to process. *Id.* ¶ 26. Although Mr. Johnson believed he was applying only for a home improvement loan, Mr. Crump created an application that requested additional money to pay off Mr. Johnson's credit card bills. *Id.* ¶¶ 26, 54. The loan closing occurred at Mr. Johnson's home on a Monday. However, the closing documents reflect the date of closing as July 31, 2002, which was a Wednesday. *Id.* ¶ 29.

At closing, Mr. Johnson was not offered the opportunity to read the documents and no one explained the documents to him. He was simply told where to sign and was distracted with conversation. *Id.* ¶¶ 30, 32. There was no attorney, public notary, or settlement agent present to protect Mr. Johnson's rights. *Id.* ¶ 27. Furthermore, Mr. Johnson was never given loan disclosures prior to closing, he was not given a good-faith estimate of closing costs, and he was never informed of his right to rescind. *Id.* ¶¶ 33, 34, 39.

When the transaction was complete, Mr. Johnson received a loan for the maximum amount he was willing to borrow, which included funds for his Sears and Goldsmith's bills despite the fact that he had explicitly rejected any debt consolidation. *Id.* ¶¶ 26, 54. Despite a loan grade of A+, the APR on Mr. Johnson's loan was 9.639% with prepayment penalties. *Id.* ¶ 67. Fees and charges totaling $2,165.50 were deducted from the loan proceeds, including loan origination and document preparation fees of over $1,000. *Id.* ¶¶ 67, 68.

Mr. Johnson's loan was ultimately sold to Wachovia Bank of Delaware, National Association, which placed a purchase pledge or commitment with MFS before closing. *Id.* ¶ 78. Wachovia disbursed funds for the loan to MFS and MFS immediately released $19,866 to Home Tech for Mr. Johnson's home repairs without setting up an escrow account. *Id.* ¶ 41. No proceeds were sent to Sears and Goldsmith's until almost a year later in April of 2003, three months before the complaint was filed in this action. *Id.* ¶ 53.

Home Tech began repairs on Mr. Johnson's home more than a month after receiving proceeds from the loan. *Id.* ¶ 42. The electrician MFS sent to Mr. Johnson's home required him to pay $500 out of his own personal funds. When the MFS contractor began repairs, he caused damage to Mr. Johnson's home. *Id.* ¶ 44. Leaks began to appear in Mr. Johnson's roof and water seeped into Mr. Johnson's living room, porch, and bedroom. *Id.* ¶ 45. In addition, workmen stole from Mr. Johnson's home. *Id.* Mr. Johnson complained on several occasions, and Earnest Wells, owner of MFS and Home Tech, after first offering groceries and $100, agreed to have the repair work corrected. *Id.* ¶¶ 48–49.

---

**3.** Home Tech and MFS were owned and operated by the same persons, with Home Tech being the home repair arm of the business and MFS arranging financing for home re-pairs and debt consolidation. The complaint does not distinguish which entity Timothy Crump was serving. (Am.Compl. ¶ 22.)

The repairs that followed were substandard. *Id.* ¶ 50. Mr. Johnson's heat and air were not installed in a workmanlike manner and the air conditioner never functioned properly. *Id.* ¶ 51.

On June 2, 2003, Mr. Johnson attempted to rescind the transaction. *Id.* ¶ 85. On July 31, 2003, he filed the complaint in the present action. Defendants filed the instant motion to dismiss on July 14, 2004.

## III. ANALYSIS

Many of the legal issues raised by the present motion have been decided in the Court's previous rulings in this case on other defendants' motions to dismiss. In the interest of economy, the Court will summarize its past findings, where relevant, as a point of departure for discussing those issues unique to Defendants' present motion.

### 1. *RICO Claims*

#### a. *Section 1962(c)*

In this Court's February 16, 2006 order (D.E.# 275) on the motion to dismiss of Home Tech Services, *et al.*, the Court found that the complaint had sufficiently alleged the predicate offenses of mail fraud and wire fraud. The Court further found that Plaintiff had alleged a pattern of racketeering activity adequate to fulfill the requirement of an "association-in-fact enterprise." From these findings the Court concluded that Plaintiff had made a cognizable claim under RICO. Although these findings were made in the context of a motion by other defendants, they pertain to the alleged enterprise as a whole and apply equally to all participants.

█ Defendants argue, however, that even if a RICO enterprise existed, Plaintiff has not sufficiently alleged the participation of Equity Title in the enterprise required under 18 U.S.C. § 1962(c). (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am.

Compl. 2.) Defendants assert that they did not

> solicit the plaintiff for a loan, did not close the loan, did not co-ordinate the loan or have anything to do with the manner in which the loan was to be made, did not benefit from the features of the loan, did not make any representation to the plaintiff,

and never met or had any contact with Plaintiff. *Id.* at 3. In essence, Defendants argue that Equity Title was a neutral third-party, neither participating in nor benefiting from the allegedly fraudulent conduct of the other defendants.

This Court has heard similar arguments in another predatory lending case in which Equity Title was named a defendant. In *Echols v. Equity Title & Escrow,* the defendants asserted that the complaint against them contained no indication of how they "conducted" or "participated" in the affairs of the enterprise. Case No. 01–2033, Order on Defs.' Mot. to Dismiss, 30 (W.D.Tenn. August 29, 2001). The Court quoted from *Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) the proposition that "in order to participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs." *Id.* (internal quotations omitted). The Court "distinguished between cases involving outsiders, who allegedly participate in an enterprise's affairs by providing advice or services ... and cases involving 'association-in-fact' enterprises, where the individuals or entities providing the services constitute the RICO enterprise." *Id.* (citing *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 728 n. 3 (7th Cir.1998)) (emphasizing that the alleged enterprise was not an association-in-fact and that particular defendants were not alleged to be part of the enterprise but were "best characterized as contractors hired by the enterprise

to perform specific tasks")); *MCM Partners, Inc. v. Andrews–Bartlett & Assocs., Inc.,* 62 F.3d 967, 978–79 (7th Cir.1995) (holding that while defendants were "lower rung participants who are under the direction of upper management" and noting that "[t]he primary fact leading us to this conclusion is the nature of the 'enterprise' [plaintiff] has depicted, as both [defendants] are alleged to be members of an 'association-in-fact' constituting the RICO enterprise") (quoting *Reves,* 507 U.S. at 184, 113 S.Ct. 1163)).

The complaint in *Echols,* like the instant action, alleged an association-in-fact enterprise, wherein certain defendants, "acting on behalf of the enterprise of which they were members, committed acts of fraud when they prepared the closing documents and settlement statements." *Echols,* Case No. 01–2033 at 30. The Court determined that the defendants' "alleged actions [were] not analogous to outsiders who perform services, albeit with knowledge of illegality, for an enterprise of which they are not members." *Id.* at 31–32.

In accordance with its findings in *Echols,* the Court concludes that in the present case, Plaintiff has provided sufficient factual allegations from which the finder of fact could infer that Equity Title and its agents conducted or participated in, either directly or indirectly, the enterprise's activities. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's § 1962(c) claim.

**b.  *Section 1962(d) (RICO Conspiracy)***

■ Plaintiff claims that Defendants have conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). In support of his claim, Plaintiff alleges that the facts he presents in the complaint demonstrate the existence of an agreement among the defendants to maintain an interest in or control of an enterprise or to participate in the affairs of the enterprise through a pattern of racketeering activity.

Defendants argue that Plaintiff has failed to sufficiently allege the existence of a conspiracy to violate § 1962(c) because "the underlying substantive claims are deficient." (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 11.) Having found that the underlying claims are not "deficient" in the foregoing section, the Court accordingly finds Defendants' argument unavailing.

The complaint provides little detail regarding the alleged conspiracy. Nonetheless, the complaint, viewed in its entirety, presents sufficient factual allegations to inform Defendants of the alleged conspiracy's members, its goals, and the various defendants' roles in it. Furthermore, it contains direct or inferential allegations that the defendants formed an enterprise and agreed that one or more of them would take criminal actions to further their alleged predatory lending scheme. Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claims under 18 U.S.C. § 1962(d) is denied.

**2.  *Civil Conspiracy***

■ Plaintiff alleges that all defendants agreed by and between each other to engage in a scheme to obtain money from Plaintiff and other consumers. *Id.* at ¶ 108. Specifically, he alleges that Defendants "engaged in overt acts of mail fraud and/or wire fraud, and all Defendants knew that such overt acts would take place." *Id.* at ¶ 111.

Defendants argue that Plaintiff's conspiracy claim is defective because he has not alleged that the primary purpose of the alleged conspiracy was to injure Plaintiff. Defendants assert that Plaintiff has merely alleged that Defendants were pursuing their own business interests, which is not sufficient to constitute a conspiratorial motive. Defendants further argue

that Plaintiff has alleged no unlawful or tortuous act against Defendants.

In its February 16, 2006 order, the Court held that the complaint was sufficient to allege a legally cognizable claim for conspiracy under Tennessee law. In light of this finding, and the Court's present finding that Plaintiff has sufficiently alleged that Defendants were an essential party to alleged fraudulent scheme, Defendants' argument is entirely unavailing. Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claims is denied.

### 3. *Fair Housing Act*

■ Plaintiff claims that Defendants have violated the Fair Housing Act ("FHA") through a predatory lending scheme of fraudulent loan practices targeted at African Americans and African American neighborhoods designed to take away the victims' homes. (Am. Compl.¶ 124.) Plaintiff specifically claims that Defendants discriminated against him in the terms and conditions of the mortgage loan and in the provision of services in connection therewith because he is African American. *Id.* at ¶ 127. Plaintiff concludes that Defendants' actions are in violation of the FHA because they make "housing unavailable to African Americans by subjecting them to discriminatory terms and conditions on loans that they neither want or need, thereby reducing their ability to use and enjoy housing." *Id.* at ¶ 125.

Although Plaintiff does not specify in his complaint the portions of the FHA he relies on, Defendants identify 42 U.S.C. § 3605, which prohibits discrimination in residential real estate-related transactions, as the only arguably applicable provision of the FHA.[4] They further assert that because Equity Title and its principals did

not set the allegedly discriminatory terms and conditions of the loan they cannot be held liable under § 3605 of the FHA.

Plaintiff argues that Defendants were an integral part of the predatory lending scheme that set up the terms and conditions of the loan. (Pl.'s Mem. Law Opp. Mot. Dismiss 26.) Plaintiff further argues that Defendants themselves determined the unreasonable and unearned fees charged to Plaintiff as part of the loan transaction. *Id.*

The Court heard and rejected an almost identical argument by defendants Home Tech Services, Inc., Memphis Financial Services, Inc., and others. These defendants urged dismissal of Plaintiff's FHA claims on grounds that they had merely assisted in the loan process and had not set the terms of the loan. In its February 24, 2006 order (D.E.# 277), the Court denied dismissal of Plaintiff's FHA claim on grounds that Plaintiff had alleged "vastly more extensive participation than a mere third party who fills out forms."

Having found that Plaintiff has sufficiently alleged that Equity Title and its agents were members in a RICO enterprise, the Court must similarly conclude that Plaintiff has sufficiently alleged substantial participation in a scheme to discriminate in residential real estate related transactions in violation of § 3605 of the FHA. Consequently, Defendant's motion to dismiss Plaintiff's FHA claims is denied.

### 4. *Equal Credit Opportunity Act*

■ Plaintiff claims violations by Defendants of the Equal Credit Opportunity Act's ("ECOA") thirty-day notice provision, which requires creditors to give borrowers notice of "adverse actions," includ-

---

**4.** Plaintiff has subsequently confirmed that it relies on § 3605, as well as § 3604, in its FHA claims.

ing denials and counteroffers. ECOA, 15 U.S.C. § 1691(d), provides, in pertinent part, that

(1) Within thirty days ... after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor....

(6) *For purposes of this subsection, the term "adverse action" means* a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a *refusal to grant credit in substantially the amount or on substantially the terms requested.*

(emphasis added).

Johnson asserts that he specifically requested a loan for repairs and remodeling to improve his home. During the application process, he was informed by a Memphis Financial Services Representative that this loan would have an interest rate of 5 to 6%. However, Plaintiff ultimately received a loan that included additional unwanted funds to consolidate credit cards, which he had explicitly rejected. His loan also bore an interest rate of 9.639%, which is over three percentage points greater than the interest rate Plaintiff was informed he would receive. Johnson alleges that this constitutes a refusal to grant credit in substantially the terms requested, and he was therefore entitled to notice of adverse action.

Defendants counter that ECOA provides for liability of lenders who fail to conform to the statute's requirements. They argue that since Defendants did not make any loan or extend credit to Plaintiff, they cannot be held in violation of the notice requirements of the ECOA.

In its February 16 order, the Court denied the motion by Wachovia to dismiss Plaintiff's ECOA claims, on grounds that Wachovia had failed to provide notice of a substantial change in loan terms. The Court finds this holding only indirectly applicable to the present motion.

The Court finds persuasive Defendants' argument that they are not directly liable under ECOA, since as a non-lender it does not fall within the statutes purview. However, as an alleged conspirator in a fraudulent scheme, Defendants are potentially derivatively liable for the actions taken by any of their co-conspirators "in carrying out their common design." *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 208 S.W.2d 344, 354 (1948). In view of the central role of the alleged failure to give Plaintiff adequate notice under ECOA in the purported "bait and switch" scheme, the Court finds that Plaintiff's allegations are sufficient as to the present Defendants. Accordingly, Defendants' motion to dismiss Plaintiff's ECOA claims is denied.

### 5. *Truth–in–Lending Act*

Plaintiff claims that defendants MFS/Worldwide, Home Tech, and Wachovia violated the Consumer Credit Protection Act or Truth–In–Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, by failing to provide information to the borrower, by providing contradictory and confusing information to the borrower, and by failing to provide a correct itemization of the amount financed and the total monthly payments due. (Am.Compl.¶ 133.)

As they did with regard to the ECOA claims, Defendants argue that the duties under TILA rest with lenders and creditors only, and therefore they cannot be found liable. Again, the Court finds Defendant's argument to be well-taken as to an absence of direct liability under TILA. However, as alleged co-conspirators Defendants remain potentially derivatively liable.

Defendants assert that Plaintiff's TILA claim is time-barred under the relevant statute of limitations. The pertinent statute provides, "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e) (2000).

Plaintiff has not responded to Defendants' assertion that the statute of limitation precludes his TILA claim. While there is some controversy as to the exact date of the transaction at issue, it is clear that Plaintiff's complaint was filed outside of the period allowed under the one-year statute of limitations. Plaintiff has presented no argument as to why the TCPA statute of limitations should be tolled. Accordingly, Defendants' motion to dismiss Plaintiff's TILA claims as to Equity Title, Carey Califf, and Steven Winkel is granted, without legal prejudice to Plaintiff.

### RESPA

█ Plaintiff claims that Defendants have violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2604(c) and 2607. Specifically, Plaintiff alleges that Defendants failed to provide Plaintiff with a proper "Good Faith Estimate" of the amount or range of settlement charges prior to closing, in violation of § 2604(c). Plaintiff further alleges that Defendants charged excessive or unearned fees, prepared fraudulent HUD–1 Settlement Statements, and payed or received referral fees, kickbacks, and split fees, in violation of § 2607(a) and (b). Defendants contend that Plaintiff's RESPA claims should be dismissed because 1) § 2604(c) does not provide a private damages remedy, and 2) Plaintiff's action is time-barred under 12 U.S.C. § 2614.

In its February 16, 2006 order, the Court held that no private right of action exists for violations of § 2604(c). Accordingly, Defendants' motion to dismiss Plain-

tiff's claims of RESPA violations under § 2604(c) is granted.

Title 12 U.S.C. § 2614 provides that any action pursuant to § 2607 may be brought within 1 year from the date of the occurrence of the violation. While there is some controversy as to the exact date of the transaction at issue, it is clear that Plaintiff's complaint was filed outside of the period allowed under the one-year statute of limitations. Plaintiff has presented no argument as to why the RESPA statute of limitations should be tolled. Accordingly, Defendants' motion to dismiss Plaintiff's claims of RESPA violations under § 2607 is also granted, without legal prejudice to Plaintiff.

### 6. *Fraud*

█ Plaintiff alleges that in carrying out the alleged predatory lending scheme, "all Defendants made false representations of existing or past material facts; that such false representations were made knowingly, without belief in their truth, or recklessly; and that Plaintiff reasonably relied upon them and thereby suffered damages as a result of such reliance." (Am. Compl.¶ 146.) Plaintiff specifically alleges that "Equity Title made false representations through the fraud in the Settlement Statements and by charging the Plaintiff for work that was never done." *Id.* Defendants counter that Plaintiff "has failed to identify any false representations by *these Defendants* of specific past or present material facts upon which they relied to their detriment." (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 15.) Since fraud must be pled with particularity, Defendants assert, Plaintiff's general allegations are insufficient.

█ Under Tennessee law, to establish a claim for fraud, the plaintiff must show (1) an intentional misrepresentation with regard to a material fact, (2) knowl-

edge of the representation['s] falsity- that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

*Shahrdar v. Global Housing, Inc.,* 983 S.W.2d 230, 237 (Tenn.Ct.App.1998) (quoting *Stacks v. Saunders,* 812 S.W.2d 587, 592 (Tenn.Ct.App.1990)). Although the Federal Rules of Civil Procedure require a plaintiff to plead fraud with particularity, in ruling upon a motion to dismiss pursuant to Fed.R.Civ.P. 9(b), a court must consider the policy of simplicity in pleading embodied in Rule 8. *Michaels Bldg. Co.,* 848 F.2d at 679.

The Court's inquiry as to these Defendants must focus upon the settlement statement prepared by Equity Title, since this is apparently the only communication Defendants had with Plaintiff. Plaintiff catalogs a number of misrepresentations allegedly contained in the settlement statement, including misstatements as to the closing date and the place of settlement, unearned fees paid to Equity Title, a fee for an unperformed appraisal, and misstatements as to the distribution of loan proceeds. (Am.Compl.29, 37, 59, 70.)

The Court finds that Plaintiff has pled with sufficient particularity allegations of intentional material representation of existing or past fact. The more difficult question, however, is the issue of detrimental reliance. Plaintiff asserts that he refinanced the property in reliance on the alleged misrepresentations to his detriment. *Id.* at ¶ 147. Plaintiff also claims

that had he known the truth about the terms of the loan and repairs, he would not have entered into the agreement. *Id.* at ¶ 148.

With regard to the lesser alleged misrepresentations, such as closing date and place of settlement, the Court is unconvinced that Plaintiff can validly claim injury. However, the more serious allegations, might well, if proven, serve to establish the elements of fraud. Consequently, Defendants' motion to dismiss Plaintiff's fraud claims is denied.

### 7. Conversion

Plaintiff claims that "each Defendant unlawfully took and/or converted to his/her/its own use certain property, to wit: loan proceeds on the subject property and fees from the loan." *Id.* at ¶ 149. Defendant responds that receipt of fees, even if arguably unreasonable, does not constitute conversion.

To establish a claim for conversion under Tennessee law, a plaintiff must show that the defendant has "1) appropriated something belonging to the plaintiff to its own use and benefit, 2) by the exercise of dominion over it, 3) in defiance of the plaintiff's right." *Mammoth Cave Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn.Ct.App.1977) (internal quotations and citations omitted). Although Equity Title validly argues that it did not take or convert any of the loan proceeds itself, Plaintiff avers that Defendants were knowing participants in a conspiracy to defraud him and take his property. (Am. Compl.¶ 109–10.) As stated previously, even if Equity Title did not itself convert any funds from the loan proceeds, it can still be held liable for the other defendants' actions under co-conspirator liability if it was a participant in a scheme to defraud Plaintiff.

In its February 16 and February 24, 2006 orders, the Court held that Plaintiff

sufficiently alleged a cause of action in conversion. Having also found that Plaintiff has sufficiently alleged Defendants' role in a conspiracy of which the alleged conversion was an integral part, the Court must further find that Plaintiff's conversion allegations are sufficient as to the present Defendants. Accordingly, Defendants' motion to dismiss Plaintiff's conversion claims is denied.

### 8. *Negligent Misrepresentation*

■ Plaintiff alleges that Defendants breached a duty of care to Plaintiff by omitting or misrepresenting material information resulting in Plaintiff's injury. Defendants claim the Plaintiff has not identified any representation made by them upon which he justifiably relied. Defendants further maintain that Tennessee law does not provide a cause of action for negligent misrepresentation where there was only an omission in supplying information.

The Court has previously found, in its discussion on fraud, that Plaintiff has sufficiently alleged that Defendants made material misrepresentations which arguably resulted in reliance and injury to Plaintiff. Having found that Plaintiff has sufficiently alleged Defendants' role in a conspiracy of which the alleged negligent misrepresentation was an integral part, the Court must further find Plaintiff's negligent misrepresentation allegations are sufficient as to the present Defendants. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claim for negligent misrepresentation.

### 9. *Breach of Contract*

■ Plaintiff alleges that all Defendants had contractual relationships with Plaintiff, either directly or implicitly and that Defendants breached such contracts to Plaintiff's detriment. Specifically, Plaintiff claims that there was an implicit contract between Plaintiff and Equity Title when Plaintiff paid Equity Title an attorney fee. Plaintiff does not specify the manner in which this "implicit contract" was breached. Defendants assert that Plaintiff has not sufficiently alleged the existence of a contract.

Despite Plaintiff's allegations, the Court cannot identify the existence of any contract between Defendants and Plaintiff. Likewise, the Court cannot identify in the record the breach of any existing contract. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim for breach of contract, without legal prejudice.

### 10. *Breach of Fiduciary Duty*

■ Plaintiff claims that by undertaking the tasks involved in financing Plaintiff's home improvements, Defendants created an agent-principal relationship and thus owed Plaintiff a fiduciary duty. (Am. Compl.¶ 116.) Specifically, Plaintiff claims that "Defendants had a fiduciary duty to put the interests of the Plaintiff, their principal, above their own," and that Defendants breached that fiduciary duty. *Id.* at ¶ 120–21. Defendants argue that there was no fiduciary duty between them and Plaintiff, and Plaintiff "has not alleged that she placed any trust or confidence in Equity Title". (Mem. Supp. Mot. Def.'s Dismiss Pl.'s Am. Compl. 18–19.)

However, Plaintiff alleges that Mr. Califf served and was paid as their closing attorney and as employee of Equity Title prepared the necessary closing documents and settlement statements for their purchase.[5] As such, Cailiff was both an agent

---

5. Equity Title may be vicariously liable for Califf's actions because Plaintiff alleges that Equity Title employs Califf. The facts leave it unclear whether Mr. Winkel is an attorney and what his role in the specific transaction was. Accordingly, for the purposes of this order, the Court will not attempt to parse the

and a fiduciary for Plaintiff. *See Alexander v. Inman,* 974 S.W.2d 689, 693–94 (Tenn.1998). The level of an attorney's duty of good faith towards his client "is significantly higher than that required in other business transactions where the parties are dealing at arm's length." Consequently, Defendants' motion to dismiss Plaintiff's breach of duty claim is denied.

### 11. *Tennessee Consumer Protection Act*

■ Plaintiff alleges fraudulent and/or deceptive business practices and transactions in violation of the Tennessee Consumer Protection Act. Defendant asserts that Plaintiff has failed to allege any tortious act to which Plaintiff was exposed. Defendants further maintain that Plaintiff's claim is barred by the one-year statute of limitations provided in Tenn.Code Ann. § 47–18–110.

The Court finds Defendants' first assertion unavailing. Plaintiff has sufficiently alleged numerous tortious acts for which Defendants are potentially directly or derivatively liable, including fraud, conversion and negligent misrepresentation.

As to Defendants' statutory limitations assertion, Tenn.Code Ann. § 47–18–110 provides that

> Any action commenced pursuant to § 47–18–109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47–18–109 be brought more than five
> (5) years after the date of the consumer transaction giving rise to the claim for relief.

Tenn.Code Ann. § 47–18–109 is the provision of the TCPA providing for private cause of action for unfair or deceptive acts or practices. Although not specifically mentioned in the complaint, it is the provision under which Plaintiff presumably makes his TCPA claim.

Plaintiff has not responded to Defendants' assertion that the statute of limitation precludes this claim. While there is some controversy as to the exact date of the transaction at issue, it is clear that Plaintiff's complaint was filed outside of the period allowed under the one-year statute of limitations. Plaintiff has presented no argument as to why the TCPA statute of limitations should be tolled. Accordingly, Defendants' motion to dismiss Plaintiff's claims of TCPA violations under Tenn.Code Ann. § 47–18–109 is granted, without legal prejudice to Plaintiff.

### 12. *Unconscionability*

Plaintiff argues that the implied contract between Defendants and Plaintiff was unconscionable and therefore the Court should void the contract or modify it to avoid unconscionable result. The Court has found no identifiable contract between Defendants and Plaintiff and therefore grants Defendants motion to dismiss Plaintiff's claim for unconscionability.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims for violations of 12 U.S.C. §§ 2604(c) and 2607 (RESPA); 15 U.S.C. §§ 1635 and 1639 (TILA); and Tenn.Code Ann. § 47–18–109 (TCPA). The Court also **GRANTS** Defendants' motion to dismiss Plaintiff's state law claims of breach of contract and unconscionability. The Court **DENIES** Defendants' motion to dismiss Plaintiff's claims for violations of 18 U.S.C. § 1962(c) (RICO); § 1962(d) (RICO Conspiracy); 42 U.S.C. § 3605(FHA); and 15 U.S.C. § 1691(d) (ECOA). Likewise, the court **DENIES**

potential liability among the three moving defendants.

Defendants' motion to dismiss Plaintiff's state law claims of civil conspiracy, fraud, conversion, negligent misrepresentation and breach of fiduciary duty.

**IT IS SO ORDERED.**